**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>DAVID SAMUEL LECHNER,<br>SSN/EIN:  xxx-xx-4948,<br><br>         Debtor. | Case No. 25-10514-JGR<br>Chapter 7 |

**ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**MOTION FOR SANCTIONS**

THIS MATTER is before the Court regarding the Motion for Sanctions under Rule 9011 against David Samuel Lechner ("Debtor"), Wesley Hassler, and Hassler Law Firm, LLC, (collectively "Hassler"), pursuant to Fed.R.Bankr.P. 9011 and 11 U.S.C. §§ 105(A), 109(G) and 349(A) filed by Clifford A. Bloch, M.D. and Natalie Bloch, as Guardians of the Minor Children and surviving heirs of Tracy Lechner, Deceased, and the Estate of Tracy Lee Lechner, by and through its personal representative, Clifford A. Bloch, M.D. (the "Bloch Parties") on May 16, 2025 (Doc. 95), the Supplement to Motion for Sanctions filed by the Bloch Parties on May 21, 2025 (Doc. 98), the Objection to the Motion for Sanctions filed by Wesley Hassler and Hassler Law Firm, LLC on May 30, 2025 (Doc. 100), the Supplemental Objection filed Wesley Hassler and Hassler Law Firm, LLC on June 6, 2025 (Doc. 106), the Interim Objection to the Motion for Sanctions filed by the Debtor on June 5, 2025 (Doc. 104), and the Debtor's Second Objection to the Motion for Sanctions filed July 7, 2025 (Doc. 114).

## OVERVIEW

Debtor was convicted of first-degree murder after deliberation of his soon-to-be ex-wife, Tracy Lee Lechner ("Decedent").  He was sentenced to life in prison without the possibility of parole by the Arapahoe County District Court ("Criminal Case").  The murder occurred on March 30, 2023, the day before their marital dissolution was to be finalized. The Debtor has appealed his murder conviction.

In addition to the Criminal Case, the murder resulted in the filing of multiple civil actions by the Bloch Parties:

> A Complaint for Damages and Jury Demand for wrongful death was filed against the Debtor in the Arapahoe County District Court, Case No. 2023CV115 ("Wrongful Death Action").

A probate case was opened in the Arapahoe County District Court, Case No. 2023PR30478 ("Estate Action").

A Complaint was filed to establish child support against the Debtor for the benefit of the Decedent's minor children in the Arapahoe County District Court, Case No. 2023JV30202 ("Child Support Action").

Complaints seeking to change the last names of the Decedent's minor children was filed in the Arapahoe County District Court, Case Nos. 2024CV30686 and 2024CV30689 ("Name Change Actions").

A pre-judgment writ of attachment was entered against the Debtor in the Wrongful Death Action ("Writ of Attachment"), freezing his assets pending resolution of the litigation pursuant to C.R.S. Section 13-54-102(4).

A Default Judgment Order was entered in the Estate Action finding that Debtor committed a felonious killing of the Decedent for purposes of the Colorado "Slayer Statute," C.R.S. § 15-11-803, and specifically C.R.S. § 15-11-803(7)(b), divesting him of any interest in the Decedent's estate[1]. Specifically, the court held the Debtor has no claim to any statutory allowances, shares, exemptions, or other benefits that might otherwise be available to a surviving spouse. The court also held that the Debtor has no interest of any kind as to any disposition made in the Decendent's will, no interest in the proceeds from any life insurance, and no rights of survivorship in the former marital home.

The court in the Estate Action severed the joint tenancy and converted the Debtor's ownership interest to that as tenants in common with the probate estate. The home was ordered to be sold with Debtor's share of the sale proceeds to be held in the Court Registry pursuant to the Writ of Attachment entered in the Wrongful Death Action, or alternatively, for the payment of any award issued in the Child Support Action.

Orders entered in the Name Change Actions changing the minor children's surnames to remove Lechner.

---

[1] C.R.S. § 15-11-803(1)(b) defines "Felonious Killing", as pertinent here, as the killing of a decedent by an individual who, as a result thereof, is convicted of the crime of murder in the first or second degree, or manslaughter, as said crimes are defined in C.R.S. §§ 18-2-102 through 18-3-104.

C.R.S. § 15-11-803(7)(b) provides "notwithstanding the status or disposition of a criminal proceeding, a court of competent jurisdiction, upon the petition of an interested person, shall determine whether, by a preponderance of evidence standard, each of the elements of felonious killing of the decedent has been established. If such elements have been so established, such determination conclusively establishes that the individual as the decedent's killer for purposes of this section."

## PROCEDURAL BACKGROUND

The Debtor filed this chapter 7 bankruptcy case on January 31, 2025, represented by Hassler.  This case is the Debtor's second bankruptcy case.  Previously, on May 20, 2024, the Debtor filed a chapter 13 bankruptcy case in this District, Case No. 24-12741-JGR.  The chapter 13 case was dismissed on July 23, 2024, as a bad faith filing after the Chapter 13 Trustee filed a Motion to Dismiss or Convert for Cause pursuant to 11 U.S.C. § 1307.  The Motion, joined by the Bloch Parties, cited the lack of sufficient and stable income to effectuate a plan and bad faith because the Debtor's plan attempted to control assets subject to the Writ of Attachment. The within chapter 7 bankruptcy case was filed 192 days after the bad faith dismissal of the first case.

**The Bloch Parties' Filings**

On February 11, 2025, attorneys Jeffrey Weinman, Patrick D. Vellone, and Bailey C. Pompea of the law firm of Allen Vellone Wolf Helfrich & Factor, P.C. ("AVWHF") filed entries of appearance on behalf of the Bloch Parties (Docs. 13, 14, and 15).  The Bloch Parties aggressively contested the bankruptcy filing.

On February 28, 2025, the Bloch Parties filed a Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(a) and 105(a) and for Sanctions (Doc. 21).

On March 5, 2025, the Bloch Parties filed a Supplement to the Motion to Dismiss (Doc. 31).

On March 11, 2025, the Bloch Parties filed a Motion for Entry of Order Confirming Termination or Absence of the Automatic Stay with Respect to State Court Litigation Pursuant to 11 U.S.C. § 362(c)(3) (Doc. 42).  An Order Confirming Termination or Absence of the Automatic Stay with Respect to State Court Litigation Pursuant to 11 U.S.C. § 362(c)(3) was entered on March 13, 2025 (Doc. 50).

On March 17, 2025, the Bloch Parties filed an Amended Notice of the Motion to Dismiss (Doc. 55).  Although objections to the motion were already filed by the Debtor and the Chapter 7 Trustee, the original notice was sent using an incorrect creditor mailing matrix using names and addresses for creditors of a different bankruptcy case.  On March 17, 2025, the Bloch Parties filed a Joint Response to the Objections to the Motion to Dismiss filed by the Debtor and the Trustee (Doc. 54).

On March 21, 2025, the Bloch Parties filed an Amended Motion to Dismiss (Doc. 58) raising 11 U.S.C. § 707(c)(2) as an additional ground for dismissal, which provides:

> Except as provided in paragraph (3), after notice and a hearing, the court, on a motion by a victim of a crime of violence or a drug trafficking crime, may when it is in the best interest of the victim dismiss a voluntary case filed under this chapter by a debtor who is an individual if such individual was convicted of such crime.

3

On April 3, 2205, the Bloch parties filed an Objection to Debtor's Claimed Exemptions (Doc. 70) pursuant to C.R.S. § 13-54-102(4), which provides that all property of a person convicted of a felonious killing shall be subject to attachment or levy in satisfaction of a judgment awarded for such felonious killing.

On May 5, 2025, the Bloch Parties filed Adversary Proceeding No. 25-01148-JGR, objecting to the dischargeability of the claims asserted against the Debtor pursuant to 11 U.S.C. § 523(a)(6).

**The Chapter 7 Trustee's Filings**

Robertson B. Cohen was appointed to serve as the Chapter 7 Trustee for the bankruptcy estate.  After conducting the Meeting of Creditors pursuant to 11 U.S.C. § 341(a), the Trustee, on March 11, 2025, issued a Notice of Possible Dividends (Doc. 41) indicating assets may be collected in the case to pay dividends to creditors, which established a bar date of June 16, 2025, to file claims.

On March 12, 2025, the Trustee filed an Objection to the Motion to Dismiss filed by the Bloch Parties (Doc. 43).

On March 12, 2025, the Trustee also filed an Objection to Debtor's Claims of Exemption (Doc. 44), raising C.R.S. § 13-54-102(4) and, alternatively, objecting to the claims of exemption based on the Debtor's inability to utilize the property as a result of his incarceration.

On April 7, 2025, the Trustee filed a Limited Objection to the Supplement to the Motion to Dismiss and Amended Motion to Dismiss (Doc. 73).

**The Debtor's Filings**

The Debtor's voluntary petition for relief under chapter 7 of the bankruptcy code, statement of financial affairs, and related schedules were filed on January 31, 2025 (Doc. 1).

On February 28, 2025, the Debtor filed notices of amendments to his schedules, adding additional assets, reallocating vehicle exemptions, amending information regarding existing creditors, and amending his income and expenses (Docs. 17 and 20). The Amended Schedules were filed on March 5, 2025 (Docs. 29, 30, 32, and 33) and on March 6, 2025 (Doc. 37).

On March 12, 2025, the Debtor filed an Objection to the Bloch Parties' Motion to Dismiss (Doc. 47).

On March 18, 2025, the Debtor filed a Response to the Trustee's Objection to Exemptions (Doc. 57).

On March 27, 2025, the Debtor filed Amendments to Schedule A/B, adding a retainer held by his criminal legal counsel and a debt owed to the Small Business Administration (Docs. 64, 65, 67).

On March 27, 2025, the Debtor filed an Objection to the Bloch Parties' Supplement to the Motion to Dismiss (Doc. 69).

On April 21, 2025, the Debtor filed a Response to the Exemption Objections filed by the Trustee and the Bloch Parties (Doc. 77).

## THE MOTION TO DISMISS

The Bloch Parties' motion to dismiss argued that the Debtor's second bankruptcy case was filed in bad faith because it was filed for non-economic purposes. Specifically, they alleged that the filing was to delay, interfere or re-litigate the Child Support Action, Name Change Actions, and Wrongful Death Action. They alleged, in each of the state court civil cases, the Debtor filed erroneous, improper, or unrelated motions, delaying the judicial process. The Bloch Parties further argued that the Debtor was not permitted any exemption under C.R.S. § 13-54-102(4) pursuant to the Writ of Attachment entered in the Wrongful Death Action. A supplement was filed to the initial motion to dismiss to include the Debtor's admission at his meeting of creditors that he did not physically sign the bankruptcy petition and related declarations prior to the filing of the case.

The Debtor objected, arguing the chapter 7 case was not filed in bad faith but was an attempt to preserve property exemptions to which he believed he was entitled. The Debtor also argued C.R.S. § 13-54-102(4) only becomes effective after the entry of a judgment in a wrongful death action. The Debtor cited the motion filed by the Chapter 13 Trustee in the earlier case that sought alternative relief of dismissal or conversion. The Debtor construed the alternative of conversion posited by the Chapter 13 Trustee meant that relief under chapter 7 was available to him. The Debtor argued the failure to physically sign the petition prior to filing was a misunderstanding due to complications associated with the Debtor's incarceration and reliance upon the mailing of documents.

The Chapter 7 Trustee also filed a limited objection to the motion to dismiss. While the Trustee sympathized with the Bloch Parties, he stressed his fiduciary obligation to all the creditors of the estate. The Trustee did not "unequivocally agree" that the inchoate lien held by the Bloch Parties, through the Writ of Attachment entered in the Wrongful Death Action, had priority over the perfected security interest granted to the Trustee pursuant to the so-called "strong arm powers" under 11 U.S.C. § 544(a).

The Bloch Parties then amended the motion to dismiss to include the argument that dismissal was warranted under 11 U.S.C. § 707(c), arguing dismissal of the voluntary chapter 7 bankruptcy case was in the best interest of the victim of the crime of violence. The Bloch Parties cited *In re Cloud* for the proposition that the personal representative of a decedent may seek dismissal of a Chapter 7 case under 11 U.S.C. § 707(c). No. 23-32824-PCM7, 2024 WL 1348814, at *1 (Bankr. D. Or. Mar. 29, 2024).

5

On May 6, 2025, the Court held a hearing on the motion to dismiss. The Chapter 7 Trustee advised the Court that he reviewed the claims filed in the bankruptcy case and reported that the Bloch Parties' claims exceeded $100,000,000 and were reasonable. Given the economics of the case, the Chapter 7 Trustee stated he believed further administration would result in a *de minimis* dividend to other creditors and therefore, withdrew the limited objection on the record.

Finding there were no operative facts in dispute, the Court held that dismissal was warranted under the plain language of 11 U.S.C. § 707(c) as being in the best interest of the victim and the statute requires deference to wishes of the victim. The Court cited the four-factor test enumerated in *In re Cloud*, and ruled that the factors were present in this case. The factors are: 1.) dismissal was requested by the Bloch Parties; 2.) the case is a two-party dispute; 3.) the trustee withdrew his limited objection; and 4.) continuation of the bankruptcy case will increase the expenses incurred by the parties with no corresponding benefit.

The Court further found that dismissal of the case was appropriate under 11 U.S.C. § 707(a) because the petition was filed in bad faith. Specifically, the Court held the bankruptcy filing was "really astounding to me. And it's also clear to me [the Debtor] just doesn't want to accept the consequences of his actions." Further, "[T]here's a noneconomic motive for the bankruptcy. There's a sinister purpose. It's almost like Mr. Lechner just wants to continue his actions, adverse actions against the Bloch Parties and his children."

The Motion to Dismiss also sought the imposition of sanctions for the filing of the chapter 7 case against the Debtor. The Court reserved ruling on the request for sanctions and permitted the Bloch Parties to renew the request by separate motion.

## THE MOTION FOR SANCTIONS

The Bloch Parties timely filed the renewed Motion for Sanctions pursuant to Fed.R.Bankr.P. 9011 and 11 U.S.C. §§ 105(a), 109(g), and 349(a). The Bloch Parties seek monetary sanctions pursuant to Fed.R.Bankr.P. 9011 and 11 U.S.C. § 105(a) for attorney's fees in the amount of $27,437.50 and costs of $1,049.12 against the Debtor and jointly and severally against Hassler. The Bloch Parties also seek a bar on filing of new bankruptcy cases by the Debtor pursuant to 11 U.S.C. §§ 105(a), 109(g), and 349(a). Finally, they also seek an Order that the dismissal of May 6, 2025, is with prejudice and that all debts that were dischargeable as to the Bloch Parties, if any, in this case are forever barred from future discharge pursuant to 11 U.S.C. § 105(a).

They argue that under 11 U.S.C. § 105(a), the Court is empowered to sanction both the Debtor and Hassler because the bankruptcy was filed in an abusive and vexatious manner, citing *In re XBridge, LLC*, and numerous precedential cases. *See* 2023 WL 4696804, at *3 (Bankr. D. Colo. July 12, 2023); *In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir. 2008); *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089-90 (10th Cir. 1994).

6

They argue that sanctions against Hassler are appropriate because he enabled the Debtor to continue his campaign of hate when he did not comply with a "Rule 9011 safe harbor" letter sent by the Bloch Parties, which informed Hassler of the case history and demanded a voluntary dismissal of the case. The Bloch parties argue that Hassler violated Fed.R.Bankr.P. 9011 by signing the Debtor's petition while aware that the Debtor's case was filed by an alleged abusive litigant for an improper purpose and that the bankruptcy filing was frivolous. The letter warned that the Bloch Parties would seek Fed.R.Bankr.P. 9011 sanctions if the chapter 7 case was not immediately dismissed.

The Bloch Parties argue that sanctions are appropriate because of the Court's findings in the first case that the Debtor had a "sinister purpose" in filing the second Chapter 7 case and that he was attempting to "relitigate state court orders that were unfavorable to him." The Bloch Parties claim that the Chapter 7 case was a further attempt to delay and frustrate the ongoing civil actions, similar to his past attempt to prevent the Decedent's children's name changes, and the filing of frivolous motions in state court, which delayed the Wrongful Death Action and Child Support Action.

Hassler filed a lengthy and strenuous objection, highlighting his professional background as an experienced and ethical attorney. Attached to the objection was a letter from Chapter 7 Panel Trustee Lynn Martinez in support of Hassler. Hassler argues that the Debtor's stated intent to assert his rights to exempt property was a valid reason to file bankruptcy, and he did not assume the Debtor lacked credibility simply because of the felony conviction. Hassler cites the language in the Chapter 13 Trustee's Motion to Dismiss the previous case, which sought to have the case dismissed or converted. Hassler asserts that the alternative relief raised by the Chapter 13 Trustee of conversion or dismissal in the prior case led to a nonfrivolous basis for the filing of the chapter 7 case. Specifically, a chapter 7 bankruptcy case did not present the feasibility concerns and lack of regular income which contributed to the bad faith dismissal of the prior chapter 13 case.

Hassler advances several theories as to why the bankruptcy case filing was not filed in bad faith or frivolous. While he was aware of the Writ of Attachment in the Wrongful Death Action, it was sealed, and Hassler was not able to review the Writ of Attachment. He believed that the Writ of Attachment attached only to non-exempt property, leaving the Debtor with exempt property to protect in a chapter 7 case. Hassler further argued that a bankruptcy case would have increased judicial efficiency by consolidating claims being advanced in the multiple state court cases. The chapter 7 case would allow the Debtor to retain exempt assets while the end result would be the same—the Bloch Parties would still receive the majority of non-exempt assets.

Hassler further argues that an intentional decision was made not to seek the imposition of the automatic stay as a result of the second bankruptcy filing, evidencing that the filing was not made to delay the state court actions. Hassler acknowledges there was an awkward exchange between counsel in the Rule 9011 letter and his response but argues that he exercised proper due diligence in response to the accusations but believed legal issues still existed that the Debtor was entitled to have adjudicated.

Hassler argues that the motion for sanctions is procedurally deficient as he did not receive proper notice of the specific facts which justify sanctions as required under Fed.R.Bankr.P. 9011. Hassler also argues that the Bloch Parties did not have leave of Court to expand the request for sanctions against Hassler, as Hassler was not named in the original demand for sanctions, incorporated in the motion to dismiss.

Hassler filed a Supplemental Objection after he obtained a copy of the Writ of Attachment. He argues that upon review, his position is bolstered because the writ states, "NOW, THIS COURT DOES THEREFORE COMMAND YOU, the Sheriff of Arapahoe County, . . . to . . . (b) attach and keep safely all property . . ., *not exempt from execution* . . . .." The Bloch Parties filed a Response to the Supplement, reiterating that their argument was based on the language of C.R.S. § 13-54-102(4), and not the language of the Writ of Attachment.

The Debtor filed an Interim Response and a Second Response. The Debtor purportedly struggled to access the legal research library at the prison, which delayed his ability to craft a response. The Court granted two motions for extensions of time to allow him the opportunity to respond.

The Interim Response alleges that the Motion for Sanctions is procedurally deficient because the Bloch Parties did not deliver a copy of the Motion to the Debtor according to prison procedure. The Debtor argues that the Chapter 13 Trustee's motion to dismiss in the first case created a belief that a chapter 7 case would be permitted, and the Debtor claims that after the chapter 13 case was dismissed, his Chapter 13 counsel inquired if he would like to refile under chapter 7. He also argues the Chapter 7 Trustee filed objections to the Bloch Parties' motion to dismiss, evidencing that the second case was not meritless.

The Debtor's Second Response reiterates his claim that the Motion was not properly served and includes prison mail room records. The Debtor argues that he did not engage in abusive litigation tactics but was merely asserting his rights in the Child Support Action. The Debtor disputes the legal fees and costs of the Bloch Parties, arguing that his attorney did more work and charged less. He argues that the Bloch Parties provided no legal support for the request that all debts that were dischargeable as to the Bloch parties are barred from future discharge. The Debtor asserts, as Hassler has already argued, that the purpose of the chapter 7 case was to protect the Debtor's state law exemptions. In support of this assertion, he cites to Colo.R.Civ.P. 102(a), which states a party may have non-exempt property attached pre-judgment but does not allow for attachment of exempt property.

## LEGAL STANDARDS

**Monetary Sanctions**

### (a) Fed.R.Bankr.P. 9011

Representations made to the Court are governed under Fed.R.Bankr.P. 9011(b), which provides: By presenting to the court a petition, pleading, written motion, or other

document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
>
> (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

Under Fed.R.Bankr.P. 9011(c), the Court may impose monetary or nonmonetary sanctions.

In assessing an alleged violation of Rule 9011, a court must evaluate an attorney's "conduct under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'" *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir. 1988)). Because our legal system expects zealous representation, "this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Id.* Ultimately, the Court has discretion in deciding whether Rule 9011 has been violated. *Id.*

"Rulings under Fed.R.Civ.P. 11 are authoritative in cases involving Bankruptcy Rule 9011." *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 437 (10th Cir. 1996).

> The Tenth Circuit has prescribed three factors that a court must consider in determining the amount of Bankruptcy Rule 9011 sanctions: (1) the opposing party's reasonable expenses incurred as a result of the violation, including reasonable attorney fees; (2) the minimum amount necessary adequately to deter future misconduct; and (3) the offender's ability to pay. In addition, a court "may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of

9

> litigation involved, and other factors as deemed appropriate in individual circumstances."

*Masunaga*, 87 F.3d at 439-40 (citations omitted).

### (b) 11 U.S.C. § 105(a)

As an alternative to awarding monetary sanctions under Fed.R.Bankr.P. 9011, bankruptcy courts in the Tenth Circuit can resort to the inherent power authorized under 11 U.S.C. § 105(a). *See In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*.").

11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"Courts still retain the inherent power to impose monetary sanctions for conduct determined by the court to be abusive, unwarranted or in bad faith." *In re U.S. Voting Mach., Inc.*, 224 B.R. 165, 169 (Bankr. D. Colo. 1998). Like sanctions under Rule 9011, a bankruptcy court's decision to award or deny monetary sanctions under Section 105(a) is committed to the court's discretion. *In re Lane*, 546 B.R. 445, 451, 452 n.26 (Bankr. App. 10th Cir. 2016) (citing *In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1415 (10th Cir.1996)).

**Nonmonetary Sanctions**

Generally, monetary sanctions are often imposed under Rule 9011 but courts may include a nonmonetary directive. Fed. R. Bankr. P. 9011(c)(4)(A)(i). Regardless of the form of the sanction, it must "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). *In re Cashion Family Tr.*, 669 B.R. 341, 388 (Bankr. D. Nev. 2025).

Alternatively, 11 U.S.C. § 105(a) provides an alternative basis for the issuance of nonmonetary sanctions, see *In re Lacy*, 353 B.R. 264, 273 (Bankr. D. Colo. 2006).

### (a) 11 U.S.C. § 109(g) provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

A petition filed in bad faith is subject to the 180-day bar for refiling under 11 U.S.C. § 109(g). *Eisen v. Curry (In re Eisen)*, 14 F.3d 649, 470-71 (9th Cir. 1994). However, in the Tenth Circuit, the time bar for filing a subsequent case is viewed as a harsh remedy that cannot be extended beyond 180 days. *In re Frieouf*, 938 F.2d 1099, 1104 (10th Cir. 1991).

### (b) 11 U.S.C. § 349(a) provides:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

In other words, one potential nonmonetary sanction is dismissal that excepts certain debts from discharge in a future bankruptcy case that may have been eligible for discharge in the dismissed case.

"[A] prejudicial dismissal under section 349(a) must be premised on bad faith conduct that is prejudicial to a creditor." *Id.* (citing *Hall v. Vance*, 887 F.2d 1041, 1045 (10th Cir. 1989)).

## ANALYSIS

The Court dismissed the Debtor's second bankruptcy, the chapter 7 case, under both 11 U.S.C. §§ 707(c) on the motion of victims of a crime of violence as being in their best interest and 707(a) as a bad faith filing. The Court has repeatedly expressed its dismay over the Debtor's actions in filing the successive bankruptcy cases as evidencing ill-will towards the Bloch Parties and his minor children.

The Court has characterized the Debtor's actions as "sinister," motivated by "non-economic" purposes, and abusive of the bankruptcy process. The Court described the Debtor's filing of the second bankruptcy case as an attempt to "torture" the Bloch Parties, defined as causing great suffering and unhappiness, accompanied by "gall," as defined as deep-seated ill-will.

The bad faith filing of this bankruptcy case warrants sanctions.

The two subsections of Fed.R.Bankr.P. 9011 at issue here are whether the Debtor and Hassler can show the filing of the second bankruptcy case was:

> (1) . . . not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs; and
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;

Hassler filed a 72-page response to the Motion for Sanctions. The response recites Hassler's experience, activities in the legal community, including work to facilitate access to justice. Hassler asserts no history of sanctionable conduct and attached a letter from Lynn Martinez, a former Chapter 7 Panel Trustee serving southern Colorado. Hassler's law practice provides legal services in the southern Colorado region. The Court takes judicial notice that residents in the region are faced with difficulties in obtaining legal representation due to the limited resources available in the community and the limited number of competent consumer bankruptcy attorneys. The Court also is familiar with Hassler's representation of clients in the Bankruptcy Court.

Hassler represents the due diligence he performed before filing the case included review of the Court's dismissal of the prior chapter 13 bankruptcy case, concluding that a primary factor for the dismissal was the lack of eligibility resulting from having no income to fund a confirmable chapter 13 plan. Hassler also reviewed the Motion to Dismiss filed by the Chapter 13 Trustee, which pled in the alternative, for the conversion of the case to chapter 7.

Hassler asserts that the primary consideration in seeking relief under chapter 7 was to obtain a determination of the Debtor's entitlement to exemptions under applicable Colorado law. Hassler recognized these issues could be raised in the various state court civil actions but believed a chapter 7 case would consolidate the issues and avoid the potential of inconsistent rulings.

Hassler was aware of the Writ of Attachment issued in the Wrongful Death Action and C.R.S. § 13-54-102(4), which provides, in pertinent part, "notwithstanding anything to the contrary in this section, all property of a person who has committed a felonious killing . . . shall be subject to attachment or levy in satisfaction of a judgment awarded [in a wrongful death action] for such felonious killing." Nevertheless, Hassler believed a nonfrivolous argument could be advanced that the Debtor could claim exemptions prior to the entry of any judgment in the Wrongful Death Action because ordinarily, under Colorado law, a prejudgment writ of attachment would be limited to non-exempt property.

Additionally, Hassler argues the case had merit as a chapter 7 case because of the Chapter 7 Trustee's objection to the Motion to Dismiss on the grounds that the bankruptcy estate may have the ability to avoid the Bloch Parties' interest in the Debtor's property created by the Writ of Attachment.

12

The Court concludes that nonfrivolous arguments existed for the filing of the second bankruptcy case. The Court also acknowledges Hassler's history of practicing as a competent consumer bankruptcy attorney before the Bankruptcy Court for the District of Colorado, his lack of prior disciplinary violations or other sanctionable conduct and his dedication to providing access to legal services.

The issue of whether the bankruptcy case was filed for any improper purpose including harassment or unnecessary delay is more problematic.

Hassler asserts the bankruptcy case was not filed for the purposes of delay. Because the case was the second bankruptcy case within a year, the automatic stay would have to be imposed. Hassler deliberately did not seek to impose the automatic stay and did not object to the Bloch Parties' request for a comfort order from the Court stating no automatic stay was in effect.

Notwithstanding these arguments, the Court found the bankruptcy case was filed in bad faith for improper purposes including harassment of the Bloch parties and his children.

**Monetary Sanctions**

The Bloch Parties request an award of attorney's fees in the amount of $27,437.50 plus costs in the amount of $1,049.12 to be assessed against the Debtor and Hassler jointly and severally.

In assessing an award of monetary sanctions, factors to be considered include: (1) the opposing party's reasonable expenses incurred as a result of the violation, including reasonable attorney fees; (2) the minimum amount necessary adequately to deter future misconduct; and (3) the offender's ability to pay.

Addressing the third factor, the Debtor is serving a life sentence without the possibility of parole for the murder of his ex-spouse. As a result of the dismissal of this bankruptcy case and the Writ of Attachment issued in the Wrongful Death Action, the Debtor has no foreseeable income or nonexempt assets with which to satisfy a monetary sanction. Thus, the Court will not impose monetary sanctions on the Debtor. In effect, the request for joint and several liability would place Hassler in the position of absorbing the full amount of any monetary sanctions.

The filing of the second chapter 7 bankruptcy case forced the Bloch Parties to incur additional legal expenses. In the bankruptcy case, the Bloch Parties filed:

- A motion to dismiss the bankruptcy case for bad faith, including a request for sanctions against the Debtor (an attachment to the motion had to be redacted, and the motion had to be re-noticed as a result of initially using an incorrect creditor mailing matrix).

- A motion for entry of a comfort order that no automatic stay was in place (the motion was subject to a compliance order).

13

- A response to objections filed to the motion to dismiss.

- An amended motion to dismiss under 11 U.S.C. § 707(c) and motion to shorten time of notice thereto.

- An objection to exemptions.

- An adversary proceeding objecting to discharge.

- Several procedural filings.

The Court is mindful that the legal expenses incurred were a direct result of the bad faith filing, but also considers the factor of fashioning a sanction in the minimum amount necessary to deter future misconduct.

The Court carefully reviewed the response filed by Hassler and finds he had several legal arguments, although tenuous, to support the second filing.  The Court is familiar with Hassler's skills as a consumer bankruptcy attorney in southern Colorado and sees no justifiable purpose in saddling him with a monetary sanction.

Accordingly, the Court, in exercising its discretion, will not impose monetary sanctions against Hassler.

**Nonmonetary Sanctions**

Under both Fed.R.Bankr.P. 9011 and 11 U.S.C. § 105(a), the Court is empowered to issue nonmonetary sanctions against the Debtor.  Over the course of the two bankruptcy cases, the Debtor has engaged in abusive conduct this Court finds shocking to the conscience.

The bad faith filing of the bankruptcy case compels dismissal with prejudice under 11 U.S.C. § 109(g) for a period of 180 days.

The Bloch Parties' claims against the Debtor consist of child support obligations that are per se not dischargeable under 11 U.S.C. § 523(a)(5) and claims resulting from the wrongful death of Tracy Lee Lechner, which fall squarely within the confines of 11 U.S.C. § 523(a)(6).  But for clarity, the dismissal of the case is with prejudice under 11 U.S.C. § 349(a) with any and all claims asserted by the Bloch Parties against the Debtor that were dischargeable in the chapter 7 bankruptcy case forever barred from discharge in future bankruptcy cases.

## CONCLUSION

For the reasons set forth above, it is

ORDERED the dismissal of this bankruptcy case is with prejudice under 11 U.S.C. § 109(g).  The Debtor is prohibited from refiling any bankruptcy case for a period of 180 days from the date of this order.  It is

FURTHER ORDERED that the dismissal of this bankruptcy case is with prejudice under 11 U.S.C. § 349(a). All debts that were dischargeable in this bankruptcy case with respect to the Bloch Parties, if any, are forever barred from future discharge.

Dated this 26th day of September, 2025.

BY THE COURT:

_____
Hon. Joseph G. Rosania, Jr.
United States Bankruptcy Judge